UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRENT N. TORTOLANO,<br><br>              Plaintiff,<br><br>v.<br><br>WILLIAM POULSEN, JOHN AND JANE DOES,<br><br>              Defendants. | Case No. 1:13-cv-00438-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

      Plaintiff, a prisoner in the custody of the Idaho Department of Correction, is proceeding pro se and in forma pauperis in this civil rights action. The Court previously reviewed Plaintiff's Complaint under 28 U.S.C. §§ 1915 and 1915A and allowed Plaintiff to proceed on his Eighth Amendment claim. (Dkt. 9.) In its Initial Review Order, the Court ordered Defendant to file a response to Plaintiff's allegations regarding his request for a preliminary injunction, "providing the Court with information about Plaintiff's current condition and medical care and providing a copy of Plaintiff's medical records relevant to the issues asserted in the request for preliminary injunction." (*Id.*, p. 5.)

      Now that the matter is fully briefed, the Court will rule on Plaintiff's motion for a preliminary injunction, plus the other pending motions. The Court finds that the decisional process would not be significantly aided by oral argument, and thus the Court

**Memorandum Decision and Order - 1**

will decide this matter on the written motions, briefs, and record without oral argument. D. Idaho L. Civ. R. 7.1(d).

## BACKGROUND

Plaintiff asserts that he suffered a back injury in January 2012 and had been suffering from a shoulder injury. In October 2012 and March 2013, Plaintiff had surgeries on his right shoulder. Plaintiffs alleges that he saw Defendant Poulsen for treatment several times between August 2012 and the time he filed his lawsuit, October 8, 2013. Plaintiff alleges that Defendant Poulsen, NP, has violated his constitutional rights by refusing to prescribe further pain medication, refusing to order a bottom bunk, not providing alternative treatment for his back pain, and not referring him out to a back specialist. (Compl. (Dkt. 3.))

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Plaintiff asks that the Court issue a preliminary injunction ordering that: (1) Corizon provide him effective pain medication; (2) he undergo an M.R.I., and (3) have a consult with a back specialist. (Dkt. 7, p. 4.)

### A. Facts Pertaining to Plaintiff's Injunctive Relief Request

Plaintiff complains that he has had back pain since January 2012. An x-ray report from January 16, 2012 indicates "degenerative disc space narrowing L5-S1." The bulk of Plaintiff's allegations regarding deficient medical treatment stem from 2013 when he began to complain of increased back pain. (*See* Pla.'s Aff., ¶¶ 16-112 (Dkt. 3-1.)) The Court will focus on this time period. The recitation below is not a complete record of

**Memorandum Decision and Order - 2**

Plaintiff's medical care during this time frame and does not recount every medical appointment but gives a representation of the treatment Plaintiff received.[1]

Plaintiff has a history of right shoulder pain and a diagnosis of right a/c separation. After being prescribed, and trying out, various pain medications to help his right shoulder pain, Plaintiff was ultimately prescribed Ultram (also known as Tramadol) in January 2012 by Janet Mitchell, P.A.C. Plaintiff's first surgery on his right shoulder took place on October 30, 2012. He underwent a second right shoulder surgery on March 19, 2013.

Plaintiff had regular follow-ups, include with Matt Valley, PA-C, and Dr. Dawson, following his surgery. He continued to take Ultram for pain. Defendant Poulsen examined Plaintiff on June 13, 2013. At this appointment, Plaintiff complained of low back pain but stated he could perform all activities of daily living and that he walked and exercised. Defendant's examination of Plaintiff showed no acute distress.

On July 12, 2013, Janet Mitchell, PA-C, noted full range of motion for Plaintiff's right shoulder. She ordered his Ultram to be decreased. On August 1, 2013, Dr. Edward Savala saw Plaintiff for pain management. Plaintiff stated he wanted Ultram for back pain or to undergo back surgery. Dr. Savala noted that Plaintiff had no difficulty ambulating and that he moved his body in a normal manner. Dr. Savala prescribed Mobic for pain.

---

[1] These facts are taken from the medical records filed by Defendant as requested by the Court as well as medical records filed by Plaintiff. (Poulsen Aff., Ex. 1 (Dkt. 15-2); Plaintiff's Affidavit and Exhibits (Dkt. 19-1--2.))

**Memorandum Decision and Order - 3**

Defendant Poulsen saw Plaintiff on August 27, 2013.  Plaintiff requested continuation of Ultram and reported that the back pain had become chronic and was exacerbated by bending and twisting.  Defendant Poulsen noted a normal gait and that lower extremity muscle strength and reflexes were normal.  Defendant planned to taper Ultram slowly.  Plaintiff would continue to receive Mobic, as well as Tylenol when needed.

On September 3, 2013, Plaintiff saw Scott Schaffer, NP, and requested a pass for a lower bunk, complaining of back pain that radiated. Ms. Schaffer noted no acute distress and that Plaintiff got on and off the examination table several times without any difficulty.  Mr. Schaffer offered Pamelor for sciatica which Plaintiff declined.   Plaintiff was seen by Dr. Savala eight days later and complained that the pain was unbearable and that the Mobic prescription did not help.  Dr. Savala noted that Plaintiff did not agree with the treatment plan and was disruptive.

On September 15, 2013, Plaintiff reported he fell from a top bunk and complained of increased low back pain with right leg pain.  Defendant Poulsen assessed non-traumatic back pain, prescribed Norco, and ordered that Plaintiff be placed on a lower bunk for seven days.

On September 19, 2013, Dr. Young saw Plaintiff.  Plaintiff reported on a scale of one to ten, his pain was constantly a seven and an eleven at its worse.  He reported that he was discontinued from Ultram and couldn't do what he normally did without pain medication. Dr. Young noted that Plaintiff had good flexion, extension and rotation.  He

**Memorandum Decision and Order - 4**

assessed "musculoskeletal back pain due to injury in past sports injuries." He prescribed ice massages and prednisone for five days. Dr. Young saw Plaintiff again on October 7, 2013 and prescribed Toradol, an NSAID, for five days. An x-ray performed on October 9, 2013 showed "a slight narrowing of the lumbosacral disc." There was no significant change since January 2012.

Defendant Poulsen examined Plaintiff on November 12, 2013. Plaintiff reported chronic low back pain. Defendant informed Plaintiff he would not change his treatment plan and would refer him to Dr. Young for pain management. Two days later, Plaintiff was seen by a physical therapist with a plan to continue physical therapy for 4 weeks.

On January 14, 2014, Plaintiff had an MRI of the lumbar spine with the following findings: mild spondylosis at L4-5 without significant central canal or foraminal stenosis; moderate bi-foraminal stenosis at L5-S1. Dr. Montalbano, a neurological surgeon, reported to Dr. Young that three was no evidence of significant canal or forminal stenosis. Lateral flexion and extension x-rays were noted to be normal and showed no evidence of instability. Dr. Montalbano noted "there is actually no significant evidence of degenerative changes." He recommended no further treatment or work up to treat Plaintiff's "subjective complaints which are not supported by his radiographic studies." Dr. Montalbano noted Plaintiff's "symptomatology is consistent with high function overlay."

B.  **Discussion of Injunctive Relief Request**

A Rule 65 preliminary injunction may be granted if the moving party demonstrates the following elements: (1) that the moving party will suffer irreparable injury if the relief is denied; (2) that the moving party will probably prevail on the merits; (3) that the balance of potential harm favors the moving party; and (4) that the public interest favors granting relief. *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987). "Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Dominion Video Satellite v. Echostar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001).

The purpose of a preliminary injunction is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions of the parties until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Where, as here, a party seeks a mandatory preliminary injunction, the court must deny such relief "unless the facts and law clearly favor the moving party." *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (internal quotation marks omitted).

In deciding whether to issue a preliminary injunction, the Court "is not bound to decide doubtful and difficult questions of law or disputed questions of fact." *Int'l. Molders' and Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (quoting *Dymo Industries, Inc. v. Tapewriter, Inc.*, 326 F.2d 141, 143 (9th Cir.

**Memorandum Decision and Order - 6**

1964)). A court "is not obliged to hold a hearing [on a motion for a preliminary injunction] when the movant has not presented a colorable factual basis to support the claim on the merits or the contention of irreparable harm." *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1176 (3rd Cir. 1990).

The medical records lodged by Defendant contain evidence that Plaintiff has consistently complained of back pain since 2013 and that he has narrowing at L5-S1 vertebrae. Although there is evidence in the record that some of the medical providers believe Plaintiff may be "provider shopping" for pain medication (as some have seen him playing sports and exhibiting no signs of back problems), Plaintiff has continuously received treatment and care for his back pain. He has been prescribed various pain medications and even recently underwent an MRI and a consultation with a neurosurgeon, two things he specifically requested in his motion for preliminary injunctive relief. Plaintiff's most significant contention appears to be with the fact that Defendants will not prescribe him Ultram for his back pain. As evidence by the treatment record, Plaintiff was initially prescribed Ultram for his right shoulder pain. After undergoing two shoulder surgeries, and an apparent improvement in the condition and associated pain with his right shoulder, his Ultram prescription was decreased and eventually discontinued. This type of allegation appears to be the precise type that the Eighth Amendment does *not* protect against; disagreement with the recommended treatment does not amount to an Eighth Amendment violation. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997)

**Memorandum Decision and Order - 7**

("[The plaintiff] is not entitled to demand specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her.").

There is no evidence, at this stage, that Defendant Poulsen, or any other prison medical provider, has acted with deliberate indifference in providing medical treatment. A disagreement with prison medical providers, as to the course of treatment that will be followed, does not amount to deliberate indifference under the Eighth Amendment. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Therefore, the Court cannot say, at this stage of the proceedings, that Plaintiff is likely to prevail on the merits of his Eighth Amendment claims. Further, Plaintiff has not established that he will suffer irreparable harm if an injunction does not issue.[2] A preliminary injunction is an extraordinary remedy and Plaintiff does not meet the standard..

The key issue for the Court is whether Defendant has been deliberately indifferent to Plaintiff's back pain. The critical element of an Eighth Amendment cause of action for which Plaintiff must bring forward evidence is whether Defendant's decision for how to treat Plaintiff's pain was the result of deliberate indifference or his professional medical judgment. The fact that a patient is in chronic pain because he suffers from a condition that causes chronic pain does not demonstrate that the medical staff has been deliberately

---

[2] Notably, Plaintiff states that Defendant has "undertaken some efforts" to improve his health care and those "efforts are commendable." (Dkt. 19, p. 12.) While he argues that even these "efforts" go to show that Defendant has been deliberately indifferent, Plaintiff's admission that his health care has improved lessens the support for issuance of a preliminary injunction.

**Memorandum Decision and Order - 8**

indifferent to his medical needs.  *See Tharp v. Justice*, 2006 WL 1677884 (E.D. Tex. June 16, 2006); *Cutler v. Correctional Medical Services*, 2011 WL 4479025 (D. Idaho Sept. 26, 2011).

Going forward, the parties should not only focus on the past medical care Plaintiff has received, for potential liability and damages purposes, but also on the more recent and ongoing medical care, that goes to his injunctive relief request.  The focus will be on both what was done to treat his back pain and what continues to be done, including medication, physical therapy, and other forms of treatment.  Also important is Plaintiff's cooperation with Defendant in aiding them in diagnosing and treating his condition.  Additionally, how Plaintiff's quality of life has changed or diminished, both in the past and currently, should be addressed and to what extent this is due to the treatment he has received and is receiving.

**PLAINTIFF'S MOTION FOR CONTEMPT & MOTION TO SUPPLEMENT**

In his motion for contempt and to compel, Plaintiff asserts that Defendant violated the Court's order to provide the Court with "information about Plaintiff's current condition and medical care . . . and . . . a copy of Plaintiff's medical records relevant to the issues asserted in the request for preliminary injunction."  (Initial Review Order, p. 5.) Plaintiff has submitted several "non-formulary drug tracking forms" that he claims indicates just some of the documents Defendant Poulsen failed to provide to the Court.

He also claims that Defendant failed to provide any of Plaintiff's "Health Services Request Forms."[3]

The Ninth Circuit has indicated that "[t]he standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999).

The Court ordered "medical records relevant to the issues" in Plaintiff's preliminary injunction motion be provided. The Court did not ask for *all* of Plaintiff's medical records; only those relevant to the issues raised. The Court finds Defendant was not in contempt of its Order requesting medical records and information about Plaintiff's current condition and care.

Documents such as the non-formulary drug tracking forms submitted by Plaintiff and the Health Service Request Forms[4] (*see* Dkt. 19-1, pp. 7-8; Dkt. 17, p. 2.) would not shed any new light on the issues raised by Plaintiff in the preliminary injunction motion and are not necessary to the Court's resolution of the issues at this stage. However, the purpose of discovery is to bridge the gap between what each party deems relevant,

---

[3] In his reply brief, Plaintiff also asks for "documents concerning pain management or persistent pain clinic, protocols, procedures . . ." (Dkt. 25, p. 7.) These were not part of the documents the Court ordered Defendant to provide in the Initial Review Order (Dkt. 9) and have no bearing on the medical care that Plaintiff has received and are outside the scope of Plaintiff's preliminary injunction motion and allegations in his complaint.

[4] While Defendant did not provide Plaintiff's Health Service Request Forms, Plaintiff attached many to his Motion for Preliminary Injunction. (*See* Dkts. 7-2, 7-3.)

**Memorandum Decision and Order - 10**

accordingly the Court will order that Defendant produce the documents requested by Plaintiff, if they have not already been provided. These includes his Health Service Request Forms, the "Non Formulary Drug Tracking Forms" for Plaintiff's medication prescriptions, and the "Corizon Pharamcorp Formulary Drug List." The Court will not order the production of "documents concerning Pain Management or Persistent Pain Clinic, protocols, procedures or other documentation related thereto." (*See* Dkt. 25, p. 7.) The Court does not find those documents would be relevant to the issues raised by Plaintiff as he makes no allegations regarding unconstitutional policies and/or procedures.

Additionally, in his Motion to Supplement (Dkts. 18, 19), Plaintiff contends that Defendant Poulsen committed perjury. The Court will briefly address those allegations here.

Plaintiff's main contention appears to be with Defendant Poulsen's alleged characterization of the pain medication Ultram as a "narcotic." (*See, e.g.*, Poulsen Aff., ¶¶ 7, 26 (Dkt. 15-1.)) Plaintiff argues that Ultram (or Tramadol) is not a narcotic and Poulsen's characterization of it as such is perjury. Plaintiff contends that the "non formulary drug tracking forms" he submits along with his motion prove that Ultram is not a narcotic as they indicate that Ultram was prescribed because it was a "non-narcotic." (*See*, Pla's Aff., Exs. 47-49 (Dkt. 19-2.)) Plaintiff's other source of contention is with Poulsen's reference to Plaintiff's history of "poly-substance abuse." Plaintiff claims this is not documented in the medical records. (*See, e.g.*, Poulsen Aff., ¶ 11.)

**Memorandum Decision and Order - 11**

The fact that there are just mere references, and not an actual diagnosis, of Plaintiff's "poly-substance abuse" does not lead to a finding that Defendant Poulsen committed perjury. Further, Plaintiff's history, or lack thereof, of poly-substance abuse is not relevant to the Court's conclusion on Plaintiff's motion for preliminary injunction.

Similarly, Defendant Poulsen's characterization of Ultram as a "narcotic" is not relevant to the Court's analysis on Plaintiff's motion. Additionally, the Court notes that various medical resources appear to classify Ultram/Tramadol differently and as such, Defendant's characterization of the pain medication is accurate according to some resources.[5] But, again, whether Ultram is a narcotic or not is not decisive, or relevant, to the Court's conclusion on the pending motion.

### PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO FILE AMENDED COMPLAINT

In the Court's Initial Review Order, it ordered that Plaintiff shall file an amended complaint, if any, within 150 days (June 9, 2014). On June 6, 2014, Plaintiff filed a motion seeking an extension to file an amended complaint until the motion for

---

[5] The Mayo Clinic states that Tramadol belongs in a group of medicines known as "opioids analgesics." *See* http://www.mayoclinic.org/drugs-supplements/tramadol-oral-route/description/drg-20068050. "Opioid" is another term for narcotic. *See* http://www.webmd.com/pain-management/guide/narcotic-pain-medications. The online Physician's Desk Reference states that Tramadol is in the "central acting analgesic" therapeutic class and that its "mechanism of action" is "centrally acting synthetic opioid analgesic." *See* http://www.pdr.net/drug-summary/ultram?druglabelid=950. The Court takes judicial notice of these facts. *See United States v. Howard*, 381 F.3d 873, 880 & n. 7 (9th Cir.2004) (it is appropriate to take judicial notice of well-known medical facts, such as those contained in the Physician's Desk Reference).

**Memorandum Decision and Order - 12**

preliminary injunction was resolved.  The Court will grant Plaintiff's motion and allow him an additional 30 days from date of this Order in which to file a motion for leave to file an amended complaint.

## ORDER

**Based on the foregoing, IT IS HEREBY ORDERED:**

1) Plaintiff's Motion for Preliminary Injunction (Dkt. 4) is DENIED;

2) Plaintiff's Motion for Contempt and Order to Compel (Dkt. 17) is GRANTED IN PART as to the production of certain documents and DENIED IN PART;

3) Plaintiff's Motion to Supplement Plaintiff's Reply to Defendant's Response to the Preliminary Injunction (Dkt. 18) is GRANTED to the extent that the Court considered Plaintiff's arguments, affidavit and exhibits (*see* Dkt. 19) in its decision on the Motion for Preliminary Injunction;

4) Plaintiff's Motion for Extension of Time to File Amended Complaint (Dkt. 20) is GRANTED.  Plaintiff has **30 days** from date of this Order to file a motion for leave to file an amended complaint.   The discovery deadline is set for **60 days** from date of this order and the deadline for dispositive motion is **90 days** from date of this Order.  If the Court grants Plaintiff's motion to amend, then the Court will revise the discovery and dispositive motion deadlines.

5) Plaintiff's Motion for Alternative Dispute Resolution and Consolidate/Joinder Case (Dkt. 21) is DENIED. The Court finds it premature to order ADR at this stage of the case and notes that two of the cases Plaintiff seeks consolidation with have been dismissed and the other is in the beginning stages of litigation.

DATED: **September 3, 2014**

Honorable Edward J. Lodge
U. S. District Judge

**Memorandum Decision and Order - 14**